RAMIREZ, J
(dissenting).
Rafael Suarez appeals his conviction and sentence for the false imprisonment of K.H. Because there is sufficient evidence to support a jury instruction on assault as a lesser included offense of kidnapping, I would reverse Suarez’s conviction and remand for a new trial.
The state charged Suarez with nine counts, including aggravated assault with a deadly weapon, and five counts of armed kidnapping. At trial, Suarez requested that the judge instruct the jury on the lesser offense of false imprisonment, aggravated assault, battery, and assault. The judge, instead, instructed the jury solely on the lesser included offense of false imprisonment. The jury only found Suarez guilty of false imprisonment of K.H., the least serious charge for which the jury was instructed.
The charges stemmed from an incident that commenced on April 26, 1997, when Suarez approached his estranged wife, Mayra Hidalgo. While she was in her automobile with the couple’s two minor children, A.S. and M.S., and the couple’s seven year old niece, K.H., Suarez banged on the automobile’s window with what appeared to be a gun, forced open the automobile’s door, grabbed Mayra by the neck, threw her against the passenger side, and commandeered the automobile. He then took the occupants on a thirty-hour trip to Jacksonville, Florida, and back to Miami, Florida.
At trial, K.H. testified that she saw Suarez get into the automobile and push Mayra out of the way, and heard Suarez tell Mayra that “if the cops came he was going to drive the car inside a river.” K.H. *666 testified that she was crying. A.S. testified that K .H. was crying so much over Suarez’s threat that he had to tell her to stop crying. K.H. also testified that she heard Suarez state that “he was going to kill every single one of them, the Hidalgo family, and he was going to start with [K.H.’s] dad.” She testified that this scared her. She thought that Suarez was going to kill her and felt that her experience was pretty scary.
During the trip to Jacksonville, K.H. heard' Suarez say that he had a gun with nine bullets in it and that this made her “afraid.” K.H. testified that “[she] thought he was serious at the time,” and “then after [she] thought he was bluffing.” Upon her return from Jacksonville, K.H. experienced nightmares and was afraid for some time afterward, and was still “kind of afraid” at the time of her testimony.
In my view, these facts support a conviction of assault. Thus, the jury should have been instructed on assault as a lesser included offense of kidnapping. Section 784.011, Florida Statutes (1997), defines an assault as “an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.” See Viveros v. State, 699 So.2d 822, 825 (Fla. 4th DCA 1997).
A properly requested jury instruction of assault as a permissive lesser included offense must be given if: (1) the information alleges all of the statutory elements of the permissive lesser included offense, and (2) there is some evidence adduced at trial establishing all of the elements. See Clarke v. State, 600 So.2d 510 (Fla. 3d DCA 1992). An instruction on a permissive lesser included offense is precluded only where “there is a total lack of evidence of the lesser crime.” Amado v. State, 585 So.2d 282, 282-83 (Fla.1991); see also Wimberly v. State, 697 So.2d 1272, 1273 (Fla. 4th DCA 1997).
In this case, the information alleged all of the statutory elements of assault and there was sufficient evidence to support a jury instruction on assault as a lesser included offense of kidnapping. There is no doubt that Suarez threatened K.H. and had the ability to carry out his threat. Suarez threatened to drive the automobile which he controlled into a river, and threatened to kill the occupants and K.H.’s family. The state argues that Suarez’s threats and actions are insufficient to create a fear of imminent violence in K.H. because she never saw Suarez holding a gun, Suarez never told her that he was going to hurt her, and that she thought that Suarez was bluffing about possessing a gun and about his threat to drive off a bridge. I disagree.
There is ample evidence in this record from which fear of imminent violence could be inferred. K.H. testified, on at least three separate occasions, that she cried, felt scared, or was afraid on the way to Jacksonville due to Suarez’s threats or actions. When Suarez threatened to drive the automobile into a river and kill “every single one of them,” this included K.H. There was testimony that K.H. screamed and cried after Suarez took control of the automobile by force. It is difficult to conceive that a seven year old child, after having witnessed Suarez’s aggressive behavior toward Mayra when he took control of the automobile by force, coupled with Suarez’s verbal threats to kill, could determine that Suarez was just “bluffing.” A fair reading of K.H.’s testimony in which she states that Suarez was “bluffing” is only the result of hindsight, but K.H. was clearly afraid at the time the threat was made. Thus, it cannot be said that the circumstances of this case did not give rise to a reasonable fear of harm in K.H. This is not a case where there is no evidence of the perceptions and feelings of a victim without which an assault conviction cannot stand. See Pray v. State, 571 So.2d 554 (Fla. 4th DCA 1990).
*667 A jury instruction should have been given on assault as a lesser included offense of the kidnapping of K.H. Therefore, I would reverse Suarez’s conviction for false imprisonment and remand the case for a new trial.